UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                **DECISION AND ORDER**
                                                             11-CR-202S

GEORGE KRAJAS, *et al.*,

                        Defendants.

1. On July 19, 2012, the Honorable Hugh B. Scott, United States Magistrate Judge, filed an Order granting in part and denying in part the omnibus motions filed by several defendants. (Docket No. 103.) One aspect of that Order granted Defendant Krajas' motion for a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).[1] The government subsequently moved for reconsideration of that aspect of the decision. On September 6, 2012, Judge Scott granted reconsideration and denied the Franks hearing. (Docket No. 121.) Krajas now appeals that decision. For the following reasons, the appeal is denied.

2. The background to this appeal is relatively straightforward. On January 21, 2012, this Court authorized the interception of wire and electronic communications involving, *inter alios*, George Krajas. (Docket No. 83.) The Government's application for this wiretap relied on two confidential sources ("CS-1" and "CS-2"), both of whom implicated

---

[1] In Franks, the Supreme Court held that, under certain circumstances, a hearing may be necessary to determine whether a search warrant, issued upon a police officer's affidavit, was based on false statements or omitted information.

Krajas in the possession and sale of illicit drugs.[2] According to CS-1, Krajas sells or fronts powder cocaine, often in quantities known as eight-balls or big eights, to certain named individuals, including CS-2, in furtherance of a drug trafficking scheme. He uses his cell phone to coordinate those activities. As a result of, *inter alia*, evidence gathered with this authorization, Krajas and ten other defendants are now charged in an multi-count Indictment for conspiracy to possess with intent to distribute cocaine, marijuana, and hydrocodone. (See Docket No. 1.)

   3. Krajas contends that Agent Marcello Falconetti, who supplied the affidavit in support of the wiretap application (see Falconetti Aff.; Docket No. 83, Ex. C), omitted material information about CS-1. Specifically, Krajas alleges that CS-1 previously lived with him, that he stole $6,000 from him, and that Krajas is the complainant in a pending criminal charge against CS-1. In a supplemental affidavit filed in response to Krajas' motion for a Franks hearing, Agent Falconetti does not dispute these facts, but avows that he was not aware of them. Although he does admit knowledge of a criminal case against CS-1, he states that he "did not further inquire about the nature of the pending criminal charges against CS-1 because CS-1 informed me that he/she was represented [by an attorney] on the matter." (See Falconetti Aff., dated 4/9/12, ¶¶ 3–4; Docket No. 95-1.) Falconetti contends that he was simply following Justice Department policy.

  Krajas argues that these facts impugn CS-1's reliability and their omission warrants a hearing under Franks.

---

[2]The gender of these informants has been intentionally withheld. The male pronoun will be used throughout.

4. To justify a Franks hearing, the defendant "must make a substantial preliminary showing that: (1) the claimed inaccuracies or omissions [in the affidavit] are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." United States v. Salameh, 152 F.3d 88, 113 (2d Cir.1998).

5. Ultimately, Judge Scott found that Krajas had not made this necessary showing. Judge Scott deemed Falconetti's omission or lack of diligence to be, at worst, negligent, and therefore insufficient under the first prong of the Franks test, which requires a "deliberate falsehood" or a "reckless disregard for the truth." (See 9/6/12 Order, at 8); Franks, 438 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient."). Considering that Krajas has no evidence that Agent Falconetti intentionally omitted this information (Agent Falconetti swore that was not aware of these facts), or that he acted in bad faith, this conclusion has support in the case law. See id. ("[A]llegations must be accompanied by an offer of proof"); United States v. Martin, 615 F.2d 318, 329 (5th Cir.1980) ("[I]t will often be difficult for an accused to prove that an omission was made intentionally or with reckless disregard rather than negligently unless he has somehow gained independent evidence that the affiant acted from bad motive or recklessly in conducting his investigation and making the affidavit."); United States v. Atkin, 107 F.3d 1213, 1217 (6th Cir. 1997) ("[A]n affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information.").

6. Krajas disagrees, and argues that such a determination should not be made until after the hearing, where Agent Falconetti's candor and state of mind can be better judged. For the following reasons, however, this Court finds such a determination unnecessary.

7. "Omissions from a warrant affidavit 'are not material unless they cast doubt on probable cause.'" United States v. Mandell, 710 F. Supp. 2d 368, 374 (S.D.N.Y. 2010) (quoting United States v. Marin–Buitrago, 734 F.2d 889, 895 (2d Cir.1984)). And the omitted information, together with the information in the affidavit "must be considered as a whole in determining if probable cause continues to exist." Id. (internal quotation marks omitted). Thus, "[i]f, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a Franks hearing." Salameh, 152 F.3d 88 at 113; see also United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000) ("Once the inaccurate information has been removed from the affidavit, the remaining portions of the affidavit should be reviewed *de novo* to determine if probable cause still exists"); United States v. Gotti, 42 F. Supp. 2d 252, 282 (S.D.N.Y. 1999) ("Even assuming, *arguendo*, that [the defendant] had made a substantial preliminary showing of deliberate falsehood, a Franks hearing is necessary only when probable cause is lacking after the material that is allegedly false is set aside.").

8. Therefore, whether Agent Falconetti's actions were negligent, reckless, intentional, or otherwise, Krajas must still show that inserting the omitted information – CS-1's former living arraignments, the stolen money, and the specifics of the pending criminal case – would defeat probable cause.

9. This he cannot do. While the additional facts unquestionably highlight a potential motivation for CS-1 to assist the Government, the information does not necessarily render him an unreliable source. Indeed, in his affidavit, Agent Falconetti swears that CS-1's statements have never proved to be false or misleading and that several of his statements were against his penal interest. (Falconetti Aff., ¶ 16.) This lends credibility to his statements. Further, even without direct evidence of such, courts are aware that informants are often motivated by self-interest. See, e.g., United States v. Gabrio, 295 F.3d 880 (8th Cir. 2002) ("[T]ipsters often provide information in the hopes of obtaining leniency with respect to their own situation and that does not necessarily mean they are unreliable."). So, even if included in the affidavit, the omitted information does not necessarily detract from the probable cause finding.

10. Moreover, and perhaps most importantly, the probable cause determination was not limited to CS-1's representations: CS-2 also incriminated Krajas. According to CS-2, Krajas has been providing him with cocaine since 2007. (Falconetti Aff., ¶ 17(a)(i).) Further, CS-2 states that Krajas uses his cell phone to coordinate his drug-trafficking activities. (Id.) Telephone records indicate that there were approximately 96 telephone calls on that phone between CS-2 and Krajas from April 15, 2009 to November 5, 2010. (Id.)

11. CS-2 also participated in controlled buys from Krajas. On November 12, 2010, CS-2 met with Krajas at AJ Auto Sales in the City of Buffalo. (Id., ¶ 23.) They then traveled together to Krajas' residence where Krajas "fronted" CS-2 a "big eight" of cocaine. (Id.) CS-2's entrance and exit from the residence were monitored by the FBI. (Id.) The FBI later inspected the cocaine and determined it weighed approximately 127 grams. (Id., ¶ 24.)

12. Several days later, on November 19, 2010, CS-2 went back to AJ Auto Sales and paid Krajas $4,000 for the cocaine. (Id., ¶ 26.) Later that day, the two met again; this time Krajas fronted CS-2 a quarter kilogram of cocaine. (Id., ¶ 28.) The FBI also seized this cocaine, which weighed approximately 245 grams. (Id., ¶ 29.)

13. For his part, Krajas raises concerns about the validity of CS-2's statements. He points out that none of the significant encounters between CS-2 and Krajas were recorded and that there is no indication in the warrant application that CS-2 was searched prior to the alleged drug transfers. He notes that because there is no surveillance verifying that the cocaine came from Krajas, the Government is left to rely on the summaries of these events as described by CS-2. Accordingly, he argues that if CS-1's statements were disregarded due to the omissions in the affidavit, CS-2's statements would be insufficient to find probable cause.

14. As an initial matter, the validity of Krajas concerns about CS-2 are questionable. The Government witnessed a known drug dealer meet with Krajas several times. The dates and times of the phone calls setting up these meetings were corroborated by telephone records. And, on two occasions, CS-2 met with Krajas and was able to produce cocaine after the meeting. That the actual transfer was not witnessed by the Government does not render CS-2's statements nugatory.

15. In any event, even if the omissions regarding CS-1 vitiate his reliability, this Court would not be forced to disregard his statements entirely (such that CS-2 would be the lone source). Instead, as noted above, this Court must consider the omissions as if they were included in the original affidavit. So considered, it is apparent that probable cause still exists.

16. This is so because even if each source's statements, considered separately, would be insufficient to establish probable cause, considered together – that is, considered under the totality of circumstances, see Illinois v. Gates, 462 U.S. 213, 230-31, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) – there is a fair probability that the wiretap would uncover evidence of a crime. Indeed, despite their independent flaws, CS-1's and CS-2's mutual statements implicating Krajas significantly diminish any concerns about their respective reliability. Canfield, 212 F.3d at 720 (the presence of two confidential informants "limit[s] the] effect of the alleged inaccuracies"); see also United States v. Wagner, 989 F.2d 69, 73 (2d Cir. 1993) ("[If] an informant's declaration is corroborated in material respects, the entire account may be credited . . . ."). And "it is enough, for purposes of assessing probable cause, that "corroboration through other sources of information reduced the chances of a reckless or prevaricating tale." Gates, 462 U.S. at 244–45.

Thus, even if this Court were presented with the omitted information, the probable cause determination would have remained unchanged because (1) the omissions do not necessarily weaken CS-1's credibility and (2) the cumulative evidence supplied by the two informants sufficiently establishes probable cause.[3] As such, Krajas is not entitled to a Franks hearing. His appeal is denied.

---

[3]Krajas argues that this issue – the probable cause prong of the Franks hearing determination – was not "preserved for appeal." The argument is without merit. This Court is not limited to those issues which were "preserved." Regardless, Krajas concedes that the Government did argue before Judge Scott that a Franks hearing is unwarranted because probable cause continued to exist even with the inclusion of the omitted statements. The issue is thus properly "preserved" in any event.

***

IT HEREBY IS ORDERED, that Krajas' Appeal (Docket No. 122) is DENIED.

FURTHER, that Judge Scott's Order (Docket No. 121) is AFFIRMED, consistent with this Decision and Order.

Further, time remains excluded until October 24, 2012. (See Minute Entry, 10/10/12.)

SO ORDERED.


Dated: October 19, 2012
       Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                                  Chief Judge
                                            United States District Judge